Learned, J.
The recorded deed from plaintiff to Mary L. was noticed to all claiming under Mary L. of its provisions and of the lien established thereby. This is not the case of a deed intended as a mortgage and recorded improperly in the deed book. The subsequent grantees of Mary L. are charged with notice, not altogether under the recording act, but because they must make title through her, and therefore take subject to the chargeswhich her title deeds show.
Mary L., by agreement to pay the first and second mortgages, as a part of the consideration, became in equity liable as quasi principal to pay those mortgages and the plaintiff became in equity the quasi surety ; the land being also the primary fund.
The $500 mortgage executed by Mary L. to Woodhull, being subsequent to the deed to her which contained the pro *76 visions for a lien, was subject to the lien for plaintiffs annuity and support. But as the deed to Mary L. was expressly subjected .to the first and second mortgages, they remained prior liens to the lien of plaintiff’s annuity and support. Plaintiff’s interest in the land when she conveyed to Mary L., was only the equity of redemption, after payment of these two mortgages. Therefore the lien which she created by her deed was only upon the said equity of redemption. She was herself liable on those two mortgages and she transferred nothing to Mary except the equity subject to them. And this should be borne in mind when we consider her equity. And so these parties expressly stated the matter in the deed. Therefore subsequent purchasers had notice that those two mortgages had priority over the lien for annuity and support; and that all the interest in the laud which plaintiff had, on which to create this lien, was this bare equity of redemption.
It seems that the $2500 mentioned as the consideration in the deed from Mary L. to Woodhull was about equal to the aggregate of the then existing leins. But in the absence of any proof on that point, it cannot be assumed that the existing mortgages were the actual consideration. On the face of the deed the consideration is expressed of $2500 “paid to Tier ” and nothing is said about the mortgage. We must therefore take the deed as it reads, expressing a money consideration paid to her, and no agreement to assume the mortgages. While, therefore, Woodhull took only such interest in the premises as Mary L. had, he did not become personally liable in regard to any of the mortgages or liens. It is unnecessary to cite authorities on a point so plain. He was under no personal obligation to pay the mortgages or to pay the annuity or support of plaintiff. Very possibly the $500 mortgage of Mary L. to him became merged, in the absence of any evidence that it was to be kept in force.
In fact, as the deed of Mary L. to Woodhull was a warranty deed, Mary L. was bound to protect him against any ouster by virtue of the first or second mortgages or by virtue of the plaintiff’s lien.
Under that deed it remained the duty of Mary L. to discharge those mortgages and to pay the lien. All of those three obligations rested on her personally, and none of them rested on Woodhull personally.
Of course, he might have to pay them to protect his land; but if those mortgages had been foreclosed and Woodhull had been dispossessed, or if the plaintiff’s lien had been enforced by action, and he had been dispossessed, he would have had a right of action against Mary L. on her covenant of warranty.
As Woodhull then owed no obligation to Mary L. to pay the *77 first or second mortgages, or to pay the annuity or support, still less did be owe any obligation to the plaintiff to pay these mortgages or the annuity and support. As above pointed out, Mary L. had become in equity the principal debtor of the first and second mortgages ; and by conveying to Woodhull by warranty deed not mentioning the mortgages she remained the principal debtor and bound to protect him from ouster under foreclosure of these mortgages.
When the plaintiff executed her deed to Mary L. the only property on which she established a lien was the equity of redemption, subject to the first and second mortgages.
She had not then and she has never since had any equity except upon the land, subject to those two mortgages. That was all which she owned on which she could create a lien. Mary L., who made herself personally bound to pay the annuity and the support and the mortgages also, was in no position to assert this, but Woodhull was, because he was personally liable for nothing. He could claim that the plaintiff had no interest or claim until payment of those two mortgages.
When, therefore, the administrator of Woodhull paid off and satisfied the $1200 mortgage, they were not, as is above shown, paying any liability or obligation which Woodhull owed to any one. They were only relieving the land of his heirs from a burden. They were paying an obligation owed in equity as principal by Mary L. and as surety by the plaintiff, and on which the plaintiff was legally and in respect to him the principal debtor.
By this act, unless relief is now afforded, the administrators will have given the plaintiff a lien on premises increased by $1200 in value above what she owned when she created the lien; and that too by taking this value from the heirs of Woodhull, who was under no obligation to pay the amount.
As between herself and Woodhull, the plaintiff was the person bound to pay the mortgage. For he had not only not assumed it personalty, but he had not even taken the land expressly subject thereto. So that, as against him, the land was not the primary fund. His administrators have therefore paid her debt; and she seeks to take advantage of their act.
In any recovery, therefore, for the plaintiff’s annuity and support, there should be declared a prior lien to the administrators of Woodhull for the money paid by them in satisfaction of the $1200 mortgage.
It is claimed, however, that in this there should be taken into account rents which Woodhull has received. And it is urged that he and his heirs stands as mortgagees in possession.
On the contrary, they are owners of the equity in fee ; purchasers under a warranty deed, and in no way mortgagees.
It matters not, on this point, whether Woodhull actually paid *78 Mary L. $2,500, or whether he only took a conveyance of the incumbered property without payment.
In either case he became a purchaser in fee. She was owner in fee, and had a right to convey to him in fee with or without .consideration. As owner in fee he was entitled to the income. Neither the mortgagee, nor the plaintiff under her lien can claim any right to the rents.
The possession and receipt of lands mortgaged does not make the possessor liable to pay out of the receipts, or to keep down, interest on the mortgage. The mortgagee can only be entitled to rent by commencing an action and having a receiver appointed. Argall v. Pitts, 78 N. Y., 239.
On the other hand, the plaintiff, as respects her lien, is the quasi mortgagee, while Woodhull and his heirs are the owners of the property, subject to her lien, such as it may be. They have the right to the rents and profits and are under no liability to account to her therefor. And they are entitled to these rents and profits, without reference to the question what price Woodhull paid Mary L. for the premises. He certainly did not take as mortgagee. When a mortgagor conveys the mortgaged land by a warranty deed to the mortgagee, the latter does not enter as mortgagee in possession. The acceptance of the deed disavows any such position.
The defendants insist that the $500 mortgage was given for a debt of plaintiff, and it should therefore have a preference. The circumstances render it probable such was the consideration ; but the fact is not found.
It is further claimed by the defendant that neither the $500 mortgage nor the judgment of foreclosure, or the balance of the $600 mortgage were merged in the conveyance to Woodhull; and that both of these should have priority over plaintiff’s claim.
That position has been answered as to the $500 mortgage. It was subject to plaintiff’s claim in its inception. It can hardly be supposed that the deed of Mary L. warranted Woodhull against a mortgage which he himself held. As to the foreclosure, it is familiar law that merger will not be permitted if the parties intend that there should be no merger, or if merger will produce injustice.
Now at the time when Mary L. conveyed to Woodhull, he held the second mortgage then in judgment. The plaintiff held the third lien, viz., that for annuit}'- and support, and Woodhull had the fourth, the $500 mortgage.
The deed to him, as before mentioned, was with warranty; so that he assumed nothing. Is it equitable, or can the parties intend, that the second mortgage, should become merged in the title, so as to give the third lien a preference over the second ? Certainly not. The doctrine of merger is not applied *79 so as to give a subsequent incumbrance preference, merely by the legal merger of the former incumbrance in the title. And therefore the second mortgage (being the one in judgment of foreclosure), has preference over plaintiff’s claim.
Some of the questions, particularly as to the burden of proof were presented. But we need not consider them.
To recapitulate ; when Mary L. conveyed to Woodhull the the liens were as follows. First; $1200 mortgage, second, the balance on the $600 mortage ; third, the plaintiff’s lien for support and annuity; fourth, the $500 mortgage to Woodhull. The deed to Woodhull did not change these liens or the order unless the fourth may have been merged.
Woodhull’ assumed no personal liability, and, on the contrary, his title was warranted by Mary L.
He and his heirs were entitled to the rent and profits ; and were not bound to pay them to the mortgagee or to plaintiff.
The payment by his adminstrators of the $1200 mortgage was not in discharge of any obligation of his; and they should not lose the priority of that lien.
But as my brethren do not agree as to some of these conclusions, the judgment must be somewhat differently modified.
The judgment must be modified so as to declare that the $1200 mortgage andthe interest thereon (or the amount thereof), and the judgment of foreclosure with its costs and interest, are liens on the premises prior to the plaintiff’s claim.
The Guardian ad litem is entitled to costs of the action and appeal.
From the avails of the sale after paying the expenses thereof, there shall be first paid to the administrators defendant the amount of the first mortgage, $1200, with interest from September 8,1880 ; next, from the balance there shall be paid the costs of the guardian ad litem; next should be paid the plaintiff’s claim and the balance to the heirs of Woodhull.